In the

# United States Court of Appeals

## For the Seventh Circuit

No. 02-3456

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

MARCUS HOWARD,

*Defendant-Appellant.*

Appeal from the United States District Court
for the Northern District of Indiana, South Bend Division.
No. 01-CR-100—**Robert L. Miller**, **Jr.**, *Chief Judge.*

ARGUED MAY 29, 2003—DECIDED AUGUST 22, 2003

Before CUDAHY, EVANS, and WILLIAMS, *Circuit Judges.*

EVANS, *Circuit Judge.* A person claiming to be Marcus Howard entered into an agreement with the government under which he pled guilty to attempting to distribute more than 50 grams of crack cocaine. He was hoping for a sentence of 10 years or less, a calculation based in part on the fact that "Marcus Howard" had no criminal record. The person who said he was Marcus Howard, however, was really Terrell Brown, who had a checkered past including convictions in Oklahoma for possession of a dangerous substance and in Wisconsin for second-degree reckless homicide. Under the sentencing guidelines, given his true criminal history, the defendant, whom we will continue to call Howard because that is the way the judgment of

conviction reads, was sentenced as a career offender to 360 months imprisonment. Not at all happy to be found out, he asked the judge to let him withdraw his guilty plea. The judge, Robert L. Miller of the Northern District of Indiana, said no.

Howard appeals, claiming, of all things, that the government breached the plea agreement by refusing to recommend a reduction in his offense level for acceptance of responsibility. He also claims that he did not understand the consequences of his plea—that is, that he could receive a sentence as long as 360 months.

It's hard to discuss this case as if it involved the usual claims that the government did not live up to its bargain or that the judge did not properly warn a defendant about the possible sentence he could receive. Howard understood only too well the consequences of having his identity revealed. And he blamed the judge and others for not knowing who he really was:

> If you all would have did you all job, you all would have found out who I was from the beginning. From the beginning. So, yeah, I'm going to sit up here and ride it on out. Because that's what they said, "Just ride it out." "Just ride it out." The government doesn't know, so don't you speak upon it. That's what I done. Know what I'm sayin'? But then I lay up here and I still get sentenced to—man. This is crazy, man.

The inference is that he followed someone's advice to keep up the deception—to "ride it out." And then he blames others for letting him get away with the deception for a while. But it seems, despite his best efforts at deception, he was unmasked and indignant about it:

> Then you give me 30 years? Thirty years for this? And you call this shit justice? How, man? How? How, man? How? How do you sleep with yourself? . . . Man, this is crazy.

There was much more in this vein and worse. In no uncertain terms, he blamed others for his predicament. One wants to hand him a mirror.

That aside, the question is whether he should have been allowed to withdraw his guilty plea. We review a district court's decision to deny a motion to withdraw a guilty plea for an "abuse of discretion." *United States v. Schilling*, 142 F.3d 388 (7th Cir. 1998). Rule 32(e) of the Federal Rules of Criminal Procedure authorizes a district judge to permit the withdrawal of a guilty plea if a defendant shows "any fair and just reason." *United States v. Milquette*, 214 F.3d 859 (7th Cir. 2000). We need to look to the total circumstances surrounding the plea to determine whether the defendant was informed of his rights. *United States v. Frazier*, 705 F.2d 903 (7th Cir. 1983). We have said that defense counsel's inaccurate prediction of a potential sentence does not warrant the withdrawal of a guilty plea. That is true even if the attorney failed to inform the defendant that he would be classified as a career offender. *United States v. Barnes*, 83 F.3d 934 (7th Cir. 1996).

In this case, Howard was informed twice during his plea hearing that he was facing at least 10 years and that the possibility of life imprisonment existed. The judge told him that the sentence he would receive could be much higher than he anticipated. Ironically, only Howard knew exactly why that might be true. Furthermore, paragraph 9(c) of the plea agreement stated that he faced a mandatory minimum of at least 10 years and up to life imprisonment:

> Under Count 10 of the indictment, I understand that the statutory maximum possible penalties that may be imposed upon me for my conviction are determined by the amount of crack cocaine that I distributed.

    i. For 50 grams or more of cocaine base (crack), the mandatory minimum penalty is ten (10) years incarceration and a maximum penalty of incarceration for life . . . .

Howard was clearly informed about dire possibilities. He was the one who knew that he was not who he seemed to be. Apparently, he also knew that it was to his advantage not to have his true identity and his criminal record revealed. It follows that the warnings about a possible life sentence would have had special meaning to him. He gambled and lost. But it is not possible to say that he was blind-sided. In short, he has not shown a "fair and just reason" to be allowed to withdraw his plea.

  In this context, his claim that he should have been granted credit for acceptance of responsibility seems ludicrous. The government's promise to request the credit was not unconditional. The plea agreement says, at paragraph 9(d):

> In consideration of my plea of guilty to Count 10 of the indictment filed in this cause and my complete and continuing demonstration of acceptance of responsibility, the United States of America and I agree that the following NON-BINDING recommendations will be made to the Court:

>     . . . .

> I understand that if I fail to continue to demonstrate acceptance of responsibility the government will not be obligated to make any of the above nonbinding recommendations contained in paragraph 9(d) and I will not be allowed to withdraw my guilty plea. I further understand that the Court could sentence me to any term of imprisonment within the applicable sentencing guideline range[.]

Once the fact that he had been hiding his true identity was established, it became clear that, in the most basic

sense, Howard was not accepting responsibility for his crime. His entire approach to this case was to evade as much responsibility as possible.

The judgment of the district court is AFFIRMED.

A true Copy:

       Teste:

                _____
                *Clerk of the United States Court of*
                   *Appeals for the Seventh Circuit*