**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Keith KYSER, a/k/a "Keezo", Ronnie Barlow, a/k/a "Rump", and Roy Mosley, Defendants–Appellants.**

Nos. 02–2998, 02–3265 and 02–4221.

United States Court of Appeals, Seventh Circuit.

Argued Feb. 27, 2004.

Decided June 24, 2004.

Rehearing En Banc Denied Sept. 3, 2004.

John T. Ryan, Office of the United States Attorney, Chicago, IL, for Plaintiff–Appellee.

Standish E. Willis, Robert A. Korenkiewicz, Chicago, IL, Richard H. Parsons, Kent V. Anderson, Office of the Federal Public Defender, Peoria, IL, for Defendants–Appellants.

Before EASTERBROOK, MANION, and EVANS, Circuit Judges.

### ORDER

Keith Kyser, Ronnie Barlow, and Roy Mosley were indicted on 17 counts for conspiring to possess with the intent to distribute more than five kilograms of cocaine, more than 50 grams of cocaine base, and more than one kilogram of heroin and marijuana. Mosley was charged separately with being a felon in possession of a firearm. On February 21, 2001, Mosley pleaded guilty to the charge of possession with intent to distribute. On June 17, 2002, Mosley moved to withdraw his guilty plea, but the district court denied the motion and sentenced him to 360 months' imprisonment. On March 8, 2001, after a two-week trial, the jury convicted Kyser and Barlow on the charge of possession with the intent to distribute. The court denied the motions of Kyser and Barlow for acquittal or for a new trial, and sentenced each respectively to 360 months' and 324 months' imprisonment. The defendants appeal and we affirm.

## I.

Starting in the early 1990's, Solomon Evans organized and led a drug conspiracy on the south side of Chicago while he served as a "regent" in the notorious Gangster Disciples street gang. Evans eventually pleaded guilty to various charges and testified that the three defendants in this appeal, Kyser, Barlow, and Mosley, were members of the drug conspiracy he led. Evans had as many as 30 people working for him selling drugs. Evans' primary source of cocaine was Tony Valdivia, who owned two Pure Power Audio shops from where he sold cocaine.

Kyser became a close friend and associate of Evans. Evans sold cocaine to Kyser and, in 1994 and 1995, also paid Kyser $1,000 to $2,000 per week for his role in the drug conspiracy. Evans testified that he and Barlow would go to the Pure Power shop to pick up cocaine and then would pack it into user quantities at Barlow's residence or at apartments rented by Evans. Barlow would also store the money generated from cocaine sales. Kyser and other members of the conspiracy would sometimes help in packaging the cocaine, storing it, and "dishing it out." At various times in 1996, ten kilograms of cocaine were stored at Barlow's apartment and 20 kilograms were stored at Kyser's residence.

Members of the conspiracy carried guns for protection. A witness testified to observing Kyser carry handguns given to him by Barlow and stated that, on one occasion, Kyser pulled a gun from under the seat of his car. On December 31, 1997, Officer Edward Maras of the Chicago Police Department observed Kyser with a chrome 9–millimeter handgun. After a chase, Maras saw Kyser attempt to dispose of the gun but Maras recovered the gun and arrested Kyser.

Dewayne Keith was a coconspirator and purchased, on average, a little more than 1/8th of a kilogram of crack per week from Kyser in 1995 and 1996. Kyser trained Keith in the drug business and the two shared an apartment. Kyser showed Keith how to cook cocaine base into crack at this apartment. Keith would resell the cocaine and was arrested in 1995. The men's friendship became strained in 1996 due to a dispute concerning the price of cocaine. As a result Keith began "sneak selling" by purchasing cocaine from other dealers. Kyser found out and asked Barlow, the day-to-day manager of the conspiracy, to mediate the dispute. Barlow directed Keith to purchase cocaine from Kyser only.

In 1997, Keith was arrested again with over 200 grams of crack. He later agreed to cooperate with the government and made a controlled buy of approximately 63 grams from a co-conspirator. Keith also made another controlled purchase of 1/8th of a kilogram of cocaine from a separate coconspirator, Charles White. Kyser served as a lookout for this exchange with White. In December 1997, Keith again contacted Kyser to purchase cocaine at the direction of law enforcement. In a recorded conversation, Kyser quoted Keith a price of $2,650 for 1/8th of a kilogram of cocaine.

In May and June 1996, Evans planned a move to Texas. He trained Barlow, Kyser, and Alex Michaud, a co-conspirator, to continue running the conspiracy after he moved. Evans had financial problems in Texas, however, and was forced to return to Chicago after several months. Evans retook control of the conspiracy and continued to pay Barlow and Kyser $1000 to $2000 per week as his assistants. In the summer of 1996, the supply of drugs became short in Chicago and the conspirators turned to co-conspirator Roy Mosley

for drugs. Michaud testified to purchasing five to ten kilograms of cocaine two to three times a week along with Barlow, Evans, and other conspirators. Michaud received $1,000 per week from Evans in exchange for delivering cocaine to Kyser and Keith. Michaud also testified to seeing a 9-millimeter handgun at the apartment of Kyser and Keith and that all the coconspirators used "clone phones," cell phones that somehow duplicated an existing number and were difficult to trace.

In July 1999, Evans was arrested as a major supplier of cocaine. He cooperated with the government and enlisted his wife to help cooperate as well. Evans' wife contacted Mosley and made consensual recordings of conversations where Mosley implicated himself as one of Evans' cocaine suppliers. Evans also implicated Barlow, who decided to cooperate with the government as well after confessing to dealing cocaine with Evans for years.

At trial, several audio and video recordings of drug transactions were played by the government. In addition, several cooperating defendants testified against Kyser and Barlow, including Evans, Keith, and Michaud. A DEA intelligence analyst testified concerning Kyser and Barlow's phone records. This expert concluded that the telephone contact between members of the conspiracy was extensive. The jury specifically found that Kyser conspired with the intent to possess and distribute more than 50 grams of cocaine base and 50 grams of cocaine, and that Barlow conspired to possess and distribute less than five grams of cocaine base and more than five kilograms of cocaine.

On February 21, 2001, Mosley pleaded guilty to the possession with intent to distribute charge. On June 17, 2002, Mosley moved to withdraw his guilty plea, but the district court denied the motion and sentenced him to 360 months' imprisonment.

Kyser and Barlow filed a motion for a new trial on December 10, 2001, arguing that the district court erred when it admitted prejudicial gang evidence involving a March 27, 1998 videotaped drug transaction. Kyser and Barlow also requested a new trial on the basis of allegedly exculpatory post-trial statements made by Evans to a probation officer. In addition, Kyser and Barlow challenge the sufficiency of the evidence. Kyser also challenges the drug quantity found by the court and argues that the government's alleged withholding of *Brady* material requires that he be granted a new trial. Finally, Barlow moved to suppress his confession on the grounds that his statements were coerced and the product of an illegal arrest. The district court denied these motions and the defendants appeal.

## II.

### A. Mosley's Motion to Withdraw His Guilty Plea

■ Mosley argues that Richard Mottweiler, who served as his attorney during the time he decided to plead guilty, had a conflict of interest because he simultaneously represented two others who were connected to some of the same drugs Mosley was charged with possessing. Mosley cites *Cuyler v. Sullivan*, 446 U.S. 335, 348, 100 S.Ct. 1708, 64 L.Ed.2d 333 (1980), for the proposition that Mottweiler's conflict caused him to render ineffective assistance of counsel because the conflict necessarily affected Mottweiler's performance.

A district court's decision to deny a defendant's motion to withdraw his guilty plea is reviewed for abuse of discretion. *See, e.g., United States v. Merriweather*, 294 F.3d 930 (7th Cir.2002). A district court may permit the withdrawal of a guilty plea if a defendant shows "any fair

and just reason." *United States v. Howard,* 341 F.3d 620, 622 (7th Cir.2003).

The district court conducted a three-day hearing on whether it should allow Mosley to withdraw his guilty plea. At this hearing, two of the attorneys who represented Mosley during this case testified. The testimony at the hearing established that the Assistant United States Attorney trying the case contacted Mosley's attorney, Mottweiler, to alert him to a possible conflict. The AUSA informed Mottweiler that he thought Mottweiler represented some other clients who owned an automobile detail shop in which law enforcement discovered 1200 kilograms of cocaine. Mottweiler withdrew after being contacted by the AUSA. However, it turns out that Mottweiler did not represent the owners of the facility where drugs were found (Arthur and Wautese Bell), but instead represented some other unrelated clients. Kevin Milner, a second attorney, was appointed to represent Mosley. Mosley became dissatisfied with Milner and contacted Mottweiler. Mottweiler explained that his new role was merely that of telling Mosley what he thought about certain matters, and that he was not acting as Mosley's attorney. Milner testified that he agreed Mottweiler was not acting as Mosley's attorney. It is undisputed that Mottweiler informed Mosley that the AUSA identified his potential conflict of interest but that Mosley nevertheless called him for advice.

The main difficulty with Mosley's argument is that there is no evidence of a conflict. Mottweiler represented McDaniel and Contreras who were never charged with possessing the 1200 kilograms of cocaine found at the automotive detail shop. Instead, Arthur and Wautese Bell were charged and Mottweiler did not represent the Bells. Contreras and McDaniel were charged in state court with possession of 50 kilograms in a car. Moreover, even if there were a conflict, it was disclosed to Mosley and he waived the conflict by continuing to seek out Mottweiler's advice. In any event, Milner served as Mosley's counsel of record and there is no claim that Milner had any sort of a conflict. Thus, the district court did not abuse its discretion in denying Mosley's motion to withdraw his guilty plea—the purported conflict did not exist.

## B. Motion by Kyser and Barlow for a New Trial

■ In a post-trial interview with a probation officer, Evans claimed that during the period of the indictment (1995–1999), he had quit selling cocaine "for the most part." Evans further estimated that he only distributed between 11 and 12 kilograms of cocaine during this time. Kyser discovered Evans' statement and moved for a new trial claiming that Evans had recanted his grand jury and trial testimony. Barlow joined in the motion.

The district court's denial of a motion for a new trial is reviewed for abuse of discretion. *See United States v. Souffront,* 338 F.3d 809, 819 (7th Cir.2003). The district court again conducted a hearing and Evans reaffirmed his trial and grand jury testimony. He explained that his statements to the probation officer regarded his mistaken assumption that his proffer letter protected him from being held accountable for more than 11 or 12 kilograms of the more than 150 kilograms of cocaine involved in the conspiracy. The district court found this persuasive and rejected the motion for a new trial. The court also held that even if Evans had sold only 11 or 12 kilograms during the relevant time, this would not change the jury verdict because the defendants were charged with distribution in excess of only five kilograms. Accordingly, the district

court did not abuse its discretion in denying the motion for a new trial because the "new evidence" presented by the defendants did not show that the jury would probably have reached an acquittal in the event of a retrial.[1] *See United States v. Walker,* 25 F.3d 540, 548–49 (7th Cir.1994), *cert. denied,* 513 U.S. 953, 115 S.Ct. 371, 130 L.Ed.2d 323 (1994).

■ Kyser and Barlow next complain about the court's decision to admit testimony by various witnesses concerning the pecking order within the Gangster Disciples gang and their membership in the gang. Again, the denial of a motion for a new trial is reviewed for abuse of discretion. *Souffront,* 338 F.3d at 819. A district court's evidentiary rulings are reviewed under the same standard. *United States v. Hodges,* 315 F.3d 794, 800 (7th Cir.2003). When an attorney fails to object, review is for plain error and this court will reverse only if the defendant probably would not have been convicted but for the error. *See United States v. Harris,* 271 F.3d 690, 702 (7th Cir.2001).

Evans testified to the "closeness" between the gang members and Keith testified that one had to be a member of the gang in order to sell drugs in the area because the gang would harass non-members who sold drugs. At the close of the government's case, Kyser pointed out that one of the exhibits contained a photograph depicting him that was not admitted into evidence. Kyser argued that the jury saw this photo. The court immediately ordered that the photo be taken out of the courtroom but expressed doubt that the jury would in any way rely on the photo even if seen. The court asked Kyser's attorney if he had any objection and he

said no. The judge gave an instruction stating "Membership in the Gangster Disciples Organization alone is not a violation of any law."

Gang membership is probative of the kind of interrelationship among people necessary for the government to prove a conspiracy. *See, e.g., United States v. Souffront,* 338 F.3d 809, 826 (7th Cir.2003); *United States v. Hardin,* 209 F.3d 652, 664 (7th Cir.2000), *overruled on other grounds, sub. nom., Sallis v. United States,* 531 U.S. 1135, 121 S.Ct. 1071, 148 L.Ed.2d 948 (2001). In this case, all the major conspirators were members of the same gang. Proof that Kyser and Barlow were in the gang is highly probative of their relationships and opportunity to form unlawful agreements with other members of the gang. The gang was an organized structure providing contacts and presumed loyalty. There is no plain error here, particularly in light of the limiting instruction. The photo is not an abuse of discretion either because, even if a juror saw it, there is no reason to believe that Kyser or Barlow would not have been convicted without the photo.

■ Kyser's final claim concerning the court's evidentiary rulings is that there was no link between him and the drug deal that was depicted on a videotape shown by the government. However, Chicago Police Officer Richard Boyle introduced the video of the cocaine buy with Kyser standing on the corner, "looking in all directions as though he was looking out for police or maybe rival gang members" according to Boyle. Videotapes of drug transactions are routinely admitted at trial, even when the various roles of those on the tape are

---

1. Kyser and Barlow argue that a more liberal standard for a new trial should be used, based upon *Larrison v. United States,* 24 F.2d 82 (7th Cir.1928). However, on February 9, 2004, this court overruled *Larrison. See United States v. Mitrione,* 357 F.3d 712 (7th Cir. 2004).

ambiguous. *See United States v. Hernandez*, 309 F.3d 458, 463 (7th Cir.2002). Based upon Boyle's testimony, the admission of this evidence is not an abuse of discretion.

## C. Sufficiency of the Evidence Against Kyser and Barlow

■ Kyser and Barlow argue that the evidence shows multiple conspiracies, not one conspiracy. This argument is construed as a challenge to the sufficiency of the evidence and must be rejected if the evidence, construed in a light most favorable to the government, could be sufficient for a rational jury to find the defendants guilty. *See United States v. Shorter*, 54 F.3d 1248, 1254 (7th Cir.1995), *cert. denied*, 516 U.S. 896, 116 S.Ct. 250, 133 L.Ed.2d 176 (1995).

The evidence set forth in Part I above tying Kyser and Barlow to the conspiracy is extensive. In summary, Evans testified that Kyser and Barlow were his top assistants and they both received $1000–2000 per week from Evans for their efforts. Keith testified that he purchased cocaine from Kyser. Michaud also testified that he delivered cocaine from Evans to Kyser several times. In addition, the video depicts Kyser as a lookout for the Evans/Keith videotaped transaction. The evidence shows that Barlow stored cocaine and money from the conspiracy at his residence. Also, Barlow and Evans picked up cocaine and repackaged it for sale. Barlow even took command of the conspiracy when Evans left for Texas. Barlow's leadership role is demonstrated by the evidence showing that he mediated a dispute between Kyser and Keith regarding the price of cocaine. In addition, Barlow confessed to part of this conduct. For these reasons, the evidence, construed in the light most favorable to the government, is sufficient for a rational jury to find the defendants guilty.

## D. District Court's Calculation of the Drug Quantity Involved

■ Kyser argues that the district court erred in adopting the Presentence Report recommendation that the drug quantity involved was more than 150 kilograms of cocaine. We review the district court's calculation of drug quantities involved in the conspiracy for clear error. *See United States v. Booker*, 248 F.3d 683, 687 (7th Cir.2001).

Michaud testified that he received 1/8th of a kilogram of crack from Kyser every three days in 1995. Michaud further testified that after 45 days, this amount he received every three days increased to 1/4 of a kilogram of cocaine, 1/8th in crack and 1/8th in powder, until 1997. This amount alone adds up to over 150 kilograms of cocaine, without even considering the other evidence set forth above concerning Kyser's specific involvement. The district court did not commit clear error, particularly because the drug quantity at sentencing must only be demonstrated by a preponderance of the evidence. Also, the indictment charged Kyser and Mosley with distribution of an amount in excess of five kilograms. Any calculation greatly exceeds that amount.

## E. Kyser's *Brady* Claim

■ Kyser claims that Evans made a statement to a probation officer before trial to the effect that he committed some of the charges in the indictment, but that he pleaded guilty to some other charges that he did not commit. To prove a *Brady* violation, Kyser must prove that the evidence is favorable to him because it is exculpatory or impeaching; the evidence has been suppressed by the government; and the suppressed evidence resulted in

prejudice. *See United States v. O'Hara,* 301 F.3d 563, 569 (7th Cir.2002). This *Brady* issue was not raised below, so review is for plain error. *See United States v. Stott,* 245 F.3d 890, 899 (7th Cir.2001).

Here, there is no evidence that the U.S. Attorney's office had the information concerning Evans' statement. Even if the probation officer did have the information, a probation officer is generally not regarded as being part of the prosecution team for *Brady* purposes. *See United States v. Dweck,* 913 F.2d 365, 370 n. 6 (7th Cir. 1990). Moreover, the district court did not plainly err because, even if the evidence were believed by a jury, it is not probable that it would lead to an acquittal in the event of a retrial. *See United States v. Walker,* 25 F.3d 540, 548–49 (7th Cir.1994), *cert. denied,* 513 U.S. 953, 115 S.Ct. 371, 130 L.Ed.2d 323 (1994).

## F. Barlow's Motion to Suppress

■ Agents and an AUSA met with Barlow in August 1999 to discuss whether he would cooperate in the investigation. Barlow left the meeting saying he would contact the government with his decision. On October 27, 1999, after apparently not hearing from Barlow, Police Officer Steven Casto called Barlow and asked that they meet. Barlow agreed and when he met Casto, he was handcuffed and taken to the police station. There, he was told that the government had enough information to convict him of a drug conspiracy. The AUSA explained his *Miranda* rights and had him execute a written waiver of those rights. Barlow then confessed to dealing kilogram quantities of cocaine with Evans for several years. We review de novo Barlow's motion to suppress his confession. *See United States v. Richardson,* 208 F.3d 626, 629 (7th Cir.2000), *cert. denied,* 531 U.S. 910, 121 S.Ct. 259, 148 L.Ed.2d 188 (2000).

The district court held a hearing and found that the *Miranda* warnings were properly given and waived. Barlow does not appeal this finding, but appeals the issue of whether there was probable cause for his arrest and whether the lack of an arrest warrant rendered his confession coerced or involuntary. The district court, after a hearing, decided against Barlow on these issues.

The familiar totality of the circumstances test governs probable cause questions. That is, whether the government has reasonably trustworthy information that a crime has been committed. *See, e.g., United States v. Chapman,* 954 F.2d 1352, 1357 (7th Cir.1992). Here, the evidence supporting probable cause includes Keith's grand jury testimony that Barlow and others delivered cocaine to Keith and Kyser. Keith also testified that Evans, while in Texas in 1996, temporarily put Barlow in charge of the entire drug operation. Evans corroborated Keith's grand jury testimony and reiterated with his own grand jury testimony that Barlow worked for him in the drug conspiracy. In addition, Michaud confessed after his own arrest that Barlow worked for him distributing drugs. The government had this evidence at the time of the arrest, giving it more than enough for probable cause.

Although it appears that Barlow was perhaps unaware of the nature of his meeting at the police station, there is no constitutional violation. He does not appeal on the basis of *Miranda,* and there are no allegations of the kind of physical abuse normally associated with an involuntary confession. Lastly, it is well settled that law enforcement may arrest a suspect without a warrant when the officer reasonably believes the suspect has committed a felony. *See, e.g., United States v. Sawyer,* 224 F.3d 675, 679–80 (7th Cir.2000). The

government had probable cause to arrest Barlow without a warrant and his resulting confession was not involuntary.

## III.

The district court did not abuse its discretion in denying Mosley's motion to withdraw his guilty plea because he did not establish a conflict of interest by his attorney. Nor did the court abuse its discretion in denying Kyser and Barlow's motion for a new trial because the purported new evidence would probably not lead to an acquittal in the event of a retrial. Likewise, the court did not abuse its discretion in admitting evidence of gang membership by Kyser and Barlow. Viewed in the light most favorable to the government, the evidence tying Kyser and Barlow to the conspiracy is sufficient for a rational jury to render a guilty verdict. The district court did not clearly err in attributing more than 150 kilograms of cocaine to Kyser. Nor did the court clearly err in rejecting Kyser's *Brady* claim because he has not established that the evidence was suppressed or that it was exculpatory or impeaching. Finally, the district court properly rejected Barlow's argument that the government lacked probable cause for his arrest and that his confession was coerced or involuntary. For these and the foregoing reasons, we AFFIRM the decision of the district court.