**UNPUBLISHED ORDER**
Not to be cited per Circuit Rule 53

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted June 19, 2006[*]
Decided June 20, 2006

**Before**

Hon. JOHN L. COFFEY, *Circuit Judge*

Hon. FRANK H. EASTERBROOK, *Circuit Judge*

Hon. DIANE S. SYKES, *Circuit Judge*

Nos. 05-2271 & 05-2272

UNITED STATES OF AMERICA,
    *Plaintiff-Appellee,*

    *v.*

ADRIAN TAUTAN, a.k.a. ATTILA
BIRO, and LOUIS APETROAIE,
    *Defendants-Appellants.*

Appeals from the United States District
Court for the Northern District of
Illinois, Eastern Division

Nos. 03 CR 472-1 & 03 CR 472-2

Ronald A. Guzmán,
*Judge.*

**O R D E R**

Adrian Tautan and Louis Apetroaie used counterfeit bank cards to steal over $110,000 from automated teller machines in Chicago and Milwaukee. They made the cards by hiding "skimmers"—portable data storage devices—and video cameras in ATMs. The skimmer captured a customer's account information when he swiped his card, and the camera recorded his keystrokes when he entered his personal identification number. Tautan and Apetroaie copied the data from the skimmers onto blank cards, and used them with the recorded PINs to withdraw cash. Police confiscated 28 counterfeit cards when they arrested Tautan and Apetroaie, and

---

[*] After examining the briefs and the records, we have concluded that oral argument is unnecessary. Thus, these appeals are submitted on the briefs and the records. *See* Fed. R. App. P. 34(a)(2).

found another 193 encoded cards in their apartment.  Tautan and Apetroaie pleaded guilty to conspiring to possess and use unauthorized access devices.  *See* 18 U.S.C. § 1029(b)(2).  The district judge sentenced Tautan to 40 months' imprisonment and Apetroaie to 30, and ordered them jointly to pay $111,672 in restitution.  Tautan appeals his sentence, arguing that it is unreasonably long in light of the 24- to 30-month range under the advisory sentencing guidelines.  In addition, both Tautan and Apetroaie argue that the court erred by not fixing a payment schedule for restitution.  We affirm Tautan's sentence, but remand both cases for the district court to amend the judgments by adding a payment schedule.

Tautan, a Romanian citizen, told the agents who arrested him that his name is Attila Biro and used that alias in court proceedings for more than a year.  He answered to it at his initial appearance, preliminary hearing, and arraignment before the magistrate judge.  And he continued to use the alias in seeking to suppress his post-arrest statement and the evidence found in his car and at his apartment.  Not until he first appeared for a change-of-plea hearing on June 8, 2004, did he acknowledge his true name.

He also misrepresented his command of the English language.  Tautan  gave his detailed post-arrest statement in English, and the magistrate judge arraigned him without an interpreter because Tautan said he had no difficulty understanding English.  He nonetheless moved to suppress the post-arrest statement on the ground that he never understood the English-language *Miranda* warnings and so his waiver had been involuntary.  After the district judge denied his motion, Tautan professed that he could not understand the proceedings at all and required a Romanian-language interpreter, which the court thereafter provided.  Tautan declined the services of an interpreter, however, when he later met with the probation officer.

In the presentence report, the probation officer calculated the guidelines range as follows:  To a base offense level of 6, *see* U.S.S.G. § 2B.1.1(a) (2003), he added ten levels because the intended loss exceeded $120,000, *see id.* § 2B1.1(b)(1)(F), two levels because the scheme involved "sophisticated means," *see id.* § 2B.1.1(b)(8)(C), and two levels for possession of device-making equipment and the production of unauthorized access devices, *see id.* § 2B.1.1(b)(9)(A), (b)(9)(B).  Although Tautan lied about his identity for more than a year after his arrest, the probation officer nevertheless declined to recommend an increase for obstruction of justice, *see* U.S.S.G. § 3C1.1, but did recommend a three-level decrease for acceptance of responsibility, *see id.* § 3E1.1(a), (b).  The probation officer thus arrived at a total offense level of 17.  That combined with Tautan's criminal history category of I—which might have gone higher except that the probation officer ran out of time to verify Interpol's reports of two Romanian convictions for aggravated theft—yielded an advisory range of 24 to 30 months.

At sentencing the government agreed with the probation officer's calculations and the resulting advisory guidelines range, and disclaimed seeking a sentence above it. Tautan's counsel requested a low-end sentence because Tautan faces the additional punishment of removal from the United States upon his release from prison. Tautan used his allocution (once again through an interpreter) to argue at length that his "defense wasn't a fair one" and to challenge the probation officer's guidelines calculations and recommended restitution amount. And he argued for a below-range sentence on the theory that, as an illegal alien, he will be denied "certain rights" enjoyed by United States citizens.

The district court accepted the calculations in the presentence report—acknowledging that the advisory range was 24 to 30 months. In varying Tautan's sentence upward, the judge discussed the nature and circumstances of his offense, *see* 18 U.S.C. § 3553(a)(1), noting that it was "rather massive" as evidenced by the number of fraudulent ATM cards discovered. The judge also weighed Tautan's "characteristics," *see id.*, and pronounced him both willing to break the law whenever it suited him as well as "deceitful and duplicitous," first with his victims and then with the court when he lied about his name and supposed inability to understand English. In its written statement of reasons the court iterated that it was moved by Tautan's dishonesty with the court:

> [Tautan's] conduct both before and after arrest reflects a commitment and dedication to criminal conduct. Further defendant's attitude is one of defiance and anger at having been apprehended and prosecuted. His conduct and demeanor before the court reflects a lack of respect for the law and his representations to the court have been dishonest.

Tautan argues that his sentence is not justified as an exercise of discretion based on the § 3553(a) factors. *See United States v. Booker*, 543 U.S. 220 (2005). According to Tautan, the district court did not give reasons in support of its chosen sentence, but "simply expressed disgust" with his crime.

Tautan's sentence is not unreasonably high. It is almost certainly too low. He should have received obstruction points for using a false name in the proceedings before the magistrate and district judges. *See* U.S.S.G. § 3C1.1, cmt. n.4(b), 4(f) (obstruction adjustment applies for perjury or giving materially false information to a judge or magistrate); *United States v. Howard,* 341 F.3d 620, 623 (7th Cir. 2003) (stating that defendant who lied to court about his identity was "in the most basic sense . . . not accepting responsibility for his crime"); *United States v. Tran*, 285 F.3d 934, 940 & n.3 (10th Cir. 2002) (upholding award of obstruction points where defendant, after giving false name to arresting officers, continued the ruse in proceedings before magistrate and district judges). The magistrate judge neglected to place Tautan under oath at his initial appearance, and the record does

not include the transcripts from the preliminary hearing or arraignment, so we cannot tell whether he committed perjury. But the upward adjustment nevertheless applies because the lie was material. *See* U.S.S.G. § 3C1.1 cmt. n.6 (a lie is "material" if it "would tend to influence or affect the issue under determination"); *United States v. Garcia*, 69 F.3d 810, 816-17 & n. 9 (7th Cir. 1995) (holding that a lie to a magistrate or judge about one's identity is material and collecting cases). Here the lie was not just material, but worked to Tautan's benefit. It kept the government from discovering his criminal history until after he entered the plea agreement. And, if he'd given his true name a year earlier, the prosecutor might have been able to resolve the Romanian convictions reported by Interpol and would have also been aware that he is an illegal alien. Since the obstruction adjustment applies, and nothing was exceptional about Tautan's acceptance of responsibility, the acceptance reduction should not have been given. *See* U.S.S.G. § 3E1.1 cmt. n.4 (obstruction under § 3C1.1—except in extraordinary case—establishes that defendant has not accepted responsibility); *United States v. Keeter*, 130 F.3d 297, 299 (7th Cir. 1997). With those adjustments, Tautan's total offense level would have been 22, which yields a guidelines range of 41 to 51 months. Tautan's sentence is below this properly calculated guidelines minimum, so he cannot plausibly argue that the judge's reasons for imposing a 40-month term did not justify the actual sentence.

Even apart from these adjustments, however, the court's reasons justified Tautan's sentence. In choosing the sentence it imposed, the court considered the "massive" and "sophisticated" nature of the offense. *See* 18 U.S.C. § 3553(a)(1), (2)(A). The court was particularly influenced by Tautan's "attitude of defiance and anger," "lack of respect for the law," and lies to the court, *id.* § 3553(a)(1), as well as his "dedicat[ion] to criminal conduct," *id.* § 3553(2)(B), (C). In an attempt to evade punishment, Tautan lied during every proceeding from the time he was arrested until his sentence was imposed. The court's reasons were more than adequate to support the sentence. *See United States v. Baker*, 445 F.3d 987, 992 (7th Cir. 2005); *United States v. Dean*, 414 F.3d 725, 729 (7th Cir. 2005).

Next, Tautan and Apetroaie both contend that the district court erred in ordering them to pay the $111,672 in restitution immediately without reason to believe they have the means to do so. Absent such findings, they argue, the court should have fixed payment schedules as required by the Mandatory Victims Restitution Act of 1996, Pub. L. No. 104-132, Title II, Subtitle A, § 206, 110 Stat. 1214, 1234 (Apr. 24, 1996) (amending 18 U.S.C. § 3664). *See United States v. Day*, 418 F.3d 746, 761 (7th Cir. 2005). They both forfeited this argument by not raising it in the district court. *See* Fed. R. Crim. P. 52(b). Nevertheless, the government concedes that there was error which is plain. In light of the probation officer's conclusion, adopted by the district court, that neither Tautan nor Apetroaie are capable of making payment immediately, we remand for entry of amended

judgments after the district court has set payment schedules consistent with their financial circumstances.

Tautan's sentence is AFFIRMED, but the judgments are VACATED as to both defendants, and their cases are REMANDED for entry of amended judgments consistent with this order.